UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVE MONTLE,

        Plaintiff,

v.                                     Case No: 05-10137-BC
                                       Honorable David M. Lawson

WESTWOOD HEIGHTS SCHOOL DISTRICT,
JERRI-LYNN WILLIAMS, in her individual
capacity, and GEORGE GRAY, in his individual
capacity,

        Defendants.
_____/

## OPINION ON JURY VERDICT AND ENTRY OF JUDGMENT

Plaintiff Stephen Montle, a probationary high school teacher whose contract was not renewed after his four-year probationary term, filed a five-count complaint against his former employer, Westwood Heights School District, and the district superintendent and high school principal. Montle alleged claims of discrimination based on race and age, and he also contended that the actions of the superintendent and the principal were in retaliation for expressions protected by the First Amendment. On April 18, 2006, the Court filed an order granting in part and denying in part the defendants' motion for summary judgment and dismissing counts two and five of the complaint, and the case proceeded to jury trial on the remaining counts.

On May 31, 2006, the jury returned a verdict in favor of defendants Westwood Heights School District and Jerri-Lynn Williams on the respective race discrimination claims. As to the First Amendment claim, the jury found for defendant Jerri-Lynn Williams and against defendant George Gray, and it assessed compensatory and punitive damages against Gray. The jury also addressed special questions posed by the Court. The jury answered "Yes" to the following question: "Did the plaintiff's act of wearing a T-shirt during school hours that stated that teachers' union members were

working without a contract cause, or could it have caused, disharmony in the workplace at the Hamady High School?" It answered "No" to this question: "Did the plaintiff's activity of wearing a T-shirt during school hours that stated that teachers' union members were working without a contract impair the plaintiff's ability to perform his duties?"

The Court directed the parties to file briefs on the question of reconciling the jury's responses with their determination of liability in light of the balancing required when a public employee claims that speech motivated retaliatory action by a government employer. *See Pickering v. Bd. of Educ. of Twp. High School Dist. 205, Will Cty*, 391 U.S. 563, 568 (1968). After reviewing the decisional authorities, the Court concludes that, in light of the jury's determination of the disruption that was or could have been wrought by the plaintiff's speech, the plaintiff's right to speak out on a matter of public concern must be subjugated to his employer's interest in maintaining order in the workplace. The Court, therefore, will enter judgment for the defendants on all counts of the complaint.

I.

The conduct underlying the legal issue was the plaintiff's act of wearing a bright green T-shirt on certain Fridays during the fall of 2004. As described in the trial testimony, the T-shirt bore initials on the front that represented the name of the plaintiff's union, the Westwood Heights Education Association ("WHEA"); the back of the T-shirt contained the statement, "Working Without a Contract." Other teachers wore the T-shirt on those days as well. There was testimony that the plaintiff confronted those teachers who declined to wear the T-shirt. The plaintiff testified that he wore the shirt to make parents and students aware of the circumstance that the union and the school board had yet to negotiate a labor contract with the teaching staff, and the teachers were

working without any collective bargaining agreement. The plaintiff alleged that this demonstration was a factor in the decision not to renew his teaching contract at the expiration of his four-year probationary period and grant him tenure. The jury apparently agreed with this claim, at least with respect to the principal, defendant George Gray. As noted above, the jury also found that the plaintiff's act of wearing the T-shirt caused or could have caused disharmony in the workplace at the Hamady High School.

## II.

To make out a First Amendment claim, the plaintiff must show three things: "1) the plaintiff engaged in constitutionally protected speech; 2) the plaintiff was subjected to adverse action or was deprived of some benefit, and 3) the protected speech was a 'substantial' or a 'motivating factor' in the adverse action." *Brandenburg v. Housing Authority of Irvine*, 253 F.3d 891, 897 (6th Cir. 2001). The present inquiry focuses on the first element.

This first element of the claim – whether the plaintiff's speech was protected by the First Amendment – is itself analyzed by applying three factors. As the Sixth Circuit has explained:

> First, a court must ascertain whether the relevant speech addressed a matter of public concern. If the answer is yes, then the court must balance the interests of the public employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. Finally, the court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee.

*Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003) (internal quotes and citations omitted). These factors account for the twin concerns of protecting the speech rights of citizens who happen to be government employees, and avoiding undue restrictions on public employers to control and direct their employees, who happen to be citizens. As the Supreme Court explained just last month,

"public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1957 (2006).  However, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom.  Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Id.* at 1958 (citations omitted).

When a public employee contends that he has suffered discipline because of his speech, the critical inquiry can be summarized as follows: "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Ibid.*  The Supreme Court reiterated the key components of this "delicate balance": "[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." *Ibid.*  The source of the limitations on such restrictions is the First Amendment, which "limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Ibid.*

The Court has already determined that the subject of the plaintiff's speech in this case touched upon a matter of public concern.  Matters of public concern include speech that "relat[es] to any matter of political, social, or other concern to the community," *Connick v. Myers*, 461 U.S. 138, 146 (1983), and "involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Brandenburg,* 253 F.3d at 898.  Although one might be tempted to relegate the plaintiff's

protestation of "no contract" to a typical employee complaint, it is apparent that an announcement by a teacher union that it is working without a contract extends beyond the individual teachers and union members. The end of summer in Michigan typically has brought with it news stories about which school districts were in jeopardy of late openings because of labor unrest. The absence of union contracts is a matter of great concern to parents and students, if not all citizens interested in public education. It is a matter of importance to the vitality of the school district and the community, and it can call into question the effectiveness of the management overseen by the elected school board. In *Pickering*, the Supreme Court found that a high school teacher's open criticism of the local board of education on its budgetary priorities amounted to a matter of public concern. Other courts, including the Sixth Circuit, have found that speech by public school teachers concerning the employment of teachers, the economics and budget of the district, and union activities as they relate to employment all touch on matters of public concern. *See Columbus Educ. Ass'n v. Columbus City Sch. Dist.*, 623 F.2d 1155 (6th Cir. 1980) (holding that a teacher's "zealous advocacy as a designated union spokesperson of a fellow teacher's complaint" was a matter of public concern); *McGill v. Bd. of Educ. of Pekin Elementary Sch.*, 602 F.2d 774 (7th Cir. 1979) (teacher's statements concerning collective bargaining agreement were of sufficient public concern to be protected by the First Amendment); *D'Andrea v. Adams*, 626 F.2d 469 (5th Cir. 1980) (statements by professor to legislative officials concerning allegedly improper use of university funds protected by the First Amendment).

The next question under *Pickering* and its Sixth Circuit spawn is whether "the interest of the employee as a citizen, in commenting on matters of public concern, outweighs the employer's interest in promoting the efficiency of the public services it performs through its employees."

*Brandenburg*, 253 F.3d at 897-98.  "Application of the *Pickering* balancing test is a matter of law for the court to decide."  *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004) (citing *Leary v. Daeschner*, 349 F.3d 888, 898 (6th Cir. 2003)).  However, "there may be some factual questions for a jury."  *Id.* at 589.  As the Eighth Circuit explained, "[a]lthough the court should resolve each of these questions as a matter of law, '[a]ny underlying factual disputes concerning whether the plaintiff's speech is protected . . . should be submitted to the jury through special interrogatories or special verdict forms.'"  *Washington v. Normandy Fire Protection Dist.*, 328 F.3d 400, 404 (8th Cir. 2003); *see also Bennis v. Gable*, 823 F.2d 723, 729 & n.6 (3d Cir.1987).  "For example, the jury should decide factual questions such as the nature and substance of the plaintiff's speech activity, and whether the speech created disharmony in the work place.  The trial court should then combine the jury's factual findings with its legal conclusions in determining whether the plaintiff's speech is protected."  *Shands v. City of Kennett*, 993 F.2d 1337, 1342-43 (8th Cir. 1993) (citations omitted).

In this case, the jury specifically determined that the plaintiff's act of wearing the T-shirt during school hours caused or could have caused disharmony in the workplace at the Hamady High School.  By its verdict, the jury also found that this speech was a factor in George Gray's decision to recommend non-renewal of Montle's teaching contract.  Given these determinations, the Court's task is to balance Montle's interest "'as a citizen, in commenting upon matters of public concern'" and the interest of the school district, through its principal, "'as an employer, in promoting the efficiency of the public services it performs through its employees.'"  *Farhat*, 370 F.3d at 593 (quoting *Pickering*, 391 U.S. at 568).  "The State [school district] bears a burden of justifying the discharge on legitimate grounds."  *Rankin v. McPherson*, 483 U.S. 378, 388 (1987) (quoting *Connick*, 461 U.S. at 150).  The State may curtail the plaintiff's speech on matters of public concern

if it "impair[s] discipline by superiors, ha[s] a detrimental impact on close working relationships, undermine[s] a legitimate goal or mission of the employer, impede[s] the performance of the speaker's duties, or impair[s] harmony among co-workers." *Meyers v. City of Cincinnati*, 934 F.2d 726, 730 (6th Cir. 1991).

In this case, the Court finds that the defendant has carried his burden of demonstrating that the speech caused disharmony in the workplace. The testimony established that the plaintiff wore his T-shirt containing the legend during class and throughout the work day. He upbraided co-workers who did not conform to the once-per-week practice, and his confrontational behavior actually prompted complaints to the principal by other teachers. Montle's message, on the other hand, did not amount to much of a revelation, since the teachers had been without a contract for over a year, and the witnesses testified without contradiction that the circumstance was common knowledge in the community. Although the status (or absence) of labor negotiations certainly was a matter of public concern, the school district's interest in ensuring professional demeanor and good relations among its faculty has been recognized as an interest that outweighs the right to speech during the workday. The Court believes that such a limitation was reasonable to ensure "the efficient provision of public services," *Garcetti*, 126 S. Ct. at 1958, which in this case was educating high school students. The defendant demonstrated, and the jury found, that Montle's speech "ha[d] some potential to affect the entity's operations." *Ibid.* The Court finds, therefore, that the plaintiff's speech was not protected by the First Amendment.

III.

Based on the factual determination by the jury, and applying controlling precedent, the Court concludes that the plaintiff's First Amendment claim against defendant George Gray must fail as a matter of law.  A judgment will enter accordingly.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   June 15, 2006

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 15, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS